IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN A. CROYLE,           )<br>        Plaintiff,     )<br>                            )<br>     v.                    )<br>                            )<br>JOANNE B. BARNHART,         )<br>COMMISSIONER OF SOCIAL      )<br>SECURITY,                   )<br>        Defendant.    ) | Civil Action No. 06-280<br>Chief Judge Donetta W. Ambrose<br>Magistrate Judge Lisa Pupo Lenihan |

REPORT AND RECOMMENDATION

I.   Recommendation

It is respectfully recommended that the Plaintiff's Motion for Summary Judgement be denied, that the Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner of Social Security to deny Plaintiff's application for benefits be affirmed.

Although this claimant was awarded benefits in a subsequent claim, as to which she submitted additional records, the decision of the Administrative Law Judge as to the benefit application at issue was supported by substantial evidence and should not be overturned based on this Court's review of that administrator's decision.  Claimant is not entitled to reconsideration of the prior benefit denial because her subsequent application was successful; nor is she entitled to reconsideration because she submitted additional records to the Appeals Council which included

(1) Plaintiff's assertion that she had been "dealing with" mental health issues for six years, and (2) records of assessment and/or treatment by Ms. Miller and Dr. Hauber subsequent to the time period relevant to the ALJ's Decision.

II.   Report

Presently before the Court for disposition are cross motions for summary judgment.

A.  Procedural History

Karen A. Croyle ("Plaintiff"), by her counsel, timely filed a Complaint pursuant to the Social Security Act, as amended (the "Act"), for review of the Commissioner's final determination disallowing her claim for benefits under the Act.  The procedural history in this matter is as follows:

Plaintiff filed application on November 17, 2003, alleging disability since November, 1999, owing to a myriad of physical maladies, including scoliosis of the neck, osteoarthritis, numbness, Achilles tendon pins, allergy to sunlight, irritable bowel syndrome, diabetes, gastroesophageal reflux disease ("GERD"), back muscle spasms, left arm weakness, sleep apnea and narcolepsy.  Plaintiff asserted that many of these disabilities related to an automobile accident in July 1998.[1]  Plaintiff received a Notice of Disapproved Claim dated February 6, 2004 and requested a hearing.

---

1. See R. at 15 (February 22, 2005 Decision of the ALJ).  The Court notes that the medical records indicate that Plaintiff, who was morbidly obese, underwent gastric by-pass surgery shortly prior to her application for disability benefits.  Id.  See also R. at 145 (operation report of surgery on September 29, 2003).

During an administrative hearing held on December 8, 2004, at which Plaintiff was represented by counsel, the Administrative Law Judge (the "ALJ") noted that the medical records submitted contained additional allegations of psychological symptoms as well, *i.e.*, a recent panic attack and diagnosis of depression. See generally R. at 432-66. Noting the minimal assessment of these issues in the records provided, the ALJ arranged a follow-up consultative psychological evaluation with Julie Uran, Ph.D. ("Dr. Uran").

Thereafter, on February 22, 2005, theALJ concluded that Plaintiff suffered from a number of significant impairments, including diabetes, diabetic neuropathy, degenerative disk disease, and obesity. He further concluded, however, that Plaintiff retained the ability to perform a limited range of work, including representative jobs identified by the Vocational Expert (the "VE"), and accordingly denied her application. The ALJ concluded that Plaintiff could perform simple, routine, low-stress work with a sit-stand option, not require great concentration, and without exposure to sunlight or hazards. See R. at 21. In January, 2006, the Appeals Counsel denied Plaintiff's request for reconsideration, and this appeal timely followed.[2]

---

2. The Order of Appeals Council indicates that it received additional evidence from Plaintiff in the form of medical records of Deborah Miller, L.C.S.W. dated March 30 and April 5, 2005; medical report from John Marty dated December 14, 2004; and medical report for University of Pittsburgh Medical Records dated November 14, 2004. See R. at 9; R. at 426 (one page of report of Dr. Marty).

The Court notes that Plaintiff's Request for Review contains her handwritten representation that she had been treated for depression for a year by Dr. Berger, a "neurologist/psychology". See R. at 10. The records suggest that Dr. Berger, to whom Plaintiff was referred by her treating physician, Dr. Moore, in March 2004, was treating Plaintiff's complaints of blackouts, headaches, neck and abdominal pain, numbness, crawling sensation, dizziness and skin rashes. See R. at 17-18 (referring to underlying medical records and noting Dr. Berger's assessment that despite "all her symptoms, [Plaintiff] seemed to be quite healthy and seemed to have a normal neurological examination"). Cf. R. at 423 (March 30, 2005 letter from Dr. Berger to Dr. Moore

(continued...)

In the intervening time, Plaintiff reapplied for benefits and received an award dated December 19, 2005, in which "Claimant was determined to be disabled February 23, 2005" and "[b]enefits were awarded August, 2005."  Plaintiff's Brief in Support of Motion for Summary Judgment at 1 (no record citation or documentation provided).  The Court notes that the medical records submitted in support of that claim included April 2005 notes of Deborah Miller, L.C.S.W. and Louis Hauber, M.D. [3]

Plaintiff's pleading in support of her Motion for Summary Judgment asserts only that the ALJ and the Appeals Counsel erred in failing to award Plaintiff benefits on the basis of mental health disability.  More particularly, Plaintiff alleges that because she previously suffered a mental health condition, and was subsequently awarded benefits on a mental health basis, there should be a reconsideration of the prior denial .  See Plaintiff's Brief in Support of Motion for Summary Judgment at 3(asserting that the ALJ and Appeals Council "failed to consider the psychiatric limitations of the Claimant where the Claimant has subsequently been found disabled based upon the psychiatric condition"); Brief in Reply to Defendant's Brief in Support of Motion for Summary Judgment at 1 ("It is not the subsequent award which the Claimant is asserting as supporting reversal.  Rather, the initial references to the psychological/psychiatric component of

---

2. (...continued)
noting that plaintiff was referred for "neurological evaluation", that she was "currently undergoing new referral for psychiatric evaluation" and that, although "myofascial therapy [could] be of some help for her neck pain", plaintiff was "apparently having her disability status challenged at the present time and she [did] not feel that returning to work would be in her best interest or even possible for her"); id. (noting that Plaintiff also reported new symptoms of hallucinating bugs crawling up the walls).

3.  See Defendant's Brief in Support of Motion for Summary Judgment at 10, n. 3.

the claim were reported by Deborah Miller six years prior.  See R. 419. . . .  The psychiatric component existed as before the ALJ.").[4]

    B.  Statement of Facts

Plaintiff was born in August 1956 and was thus 48 years old at the time of the Decision.[5] She has completed high school and two years of vocational training, and has intermittent past relevant work experience as a computer technician, customer service representative, medical assistant, and retail clerk at various businesses and facilities.  Plaintiff resides with her husband and has two children.

With regard to the challenged denial of benefits on a mental health basis, Plaintiff's medical records indicate the following:

Shortly before the ALJ's hearing, *i.e.*, on December 1, 2004, Plaintiff's treating physician, Terrence Moore, M.D. ("Dr. Moore") completed an Employability Assessment Form for the Department of Public Welfare indicating that Plaintiff was permanently disabled based on numerous conditions, including "severe depression."  See R. at 337.  Treatment notes supportive of this mental health diagnosis reflect Plaintiff's complaints to Dr. Moore on October 15, 2004 and November 8, 2004 that she was experiencing chest pain perhaps related to anxiety attacks.

---

4. As discussed, *infra*, this pleading statement is rather inaccurate, as the cited "report" of a prior history of mental health disability was made by *Plaintiff* and not her Licensed Clinical Social Worker ("LSCW"), Ms. Miller.  See R. at 419.  The Court further notes that this "report" was made by Plaintiff following the ALJ's Decision denying benefits and shortly before Plaintiff's request for an Appeals Council review.  It is not supported by the evidence of record.  To the contrary, the record contains nothing whatsoever by way of a medical report of mental health treatment or even assessment six years prior to the period at issue.

5. Plaintiff is therefore considered a "younger person" under the Commissioner's regulations.  See 20 C.F.R. § 416.963(b).

In addition, Plaintiff's medical evidence included a notation of antidepressant treatment in Dr. Bidula's report of October 21, 2004 (see R. at 333)[6] and complaint to another physician, Brian Cicuto, D.O. ("Dr. Cicuto") on November 18, 2004, that her pain greatly affected her mood and concentration. Plaintiff provided no further evidence of mental health assessment, counseling or treatment.

Dr. Uran's consultative psychological examination performed the following January led that physician to conclude that Plaintiff was experience "moderate" mental health symptoms (as assessed by her evaluation of Plaintiff's presentation and her Global Assessment of Functioning ("GAF" score) and that she had a "fair" prognosis for higher level functioning.[7]

Approximately three months thereafter, following the ALJ's February, 2005 Decision and in close proximity to her April 18, 2005 Request for Review by the Appeals Counsel,[8] Plaintiff obtained and submitted a mental health statement from a licensed clinical social worker, Deborah Miller. See R. 418-25. Ms. Miller recounts Plaintiff's reports of anxiety and panic attacks and recommends both a psychiatric evaluation and participation in individual therapy.

---

6. The record indicates that Plaintiff was treated by Leo P. Bidula, M.D. for complaints of neck, shoulder and back pain on April 2, 2003 and October 16, 2003. She was treated with Celebrex and Flexeril. See R. at 17 (Decision of the ALJ, summarizing medical evidence). The Record cited by Plaintiff, at 333, includes Dr. Bidula's October 21, 2004 notation as follows: "We had talked about a potential intervention with antidepressants. She states she used Lexapro which . . . increased her migraines. She has also had an evolution of anxiety attacks and is now on Xanax." The Court notes that, as reflected in the transcript of the December, 2004 hearing, the ALJ's decision to obtain a consultative evaluation turned in large part on Plaintiff's late-2004 allegations of panic attacks.

7. This assessment was consistent with Plaintiff's own characterization in her application for benefits, which reported no mental health concerns other than "mild depression because of inability to work." See R. at 76.

8. See R. at 10.

Ms. Miller's notes of April 1, 2005, indicate that Plaintiff reported "dealing with" psychiatric symptoms for six years.[9] And a treatment note of April 5, 2005 signed by Louis Hauber, M.D., suggests Plaintiff was prescribed anxiety medication. See R. at 427.[10]

     C. "Substantial Evidence" Standard of Review

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act. 42 U.S.C. § 405(g).   See also, *e.g.*, Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

More specifically, 42 U.S.C. Section 405(g) provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

---

9. See R. at 419; Plaintiff's Brief in Support of Motion for Summary Judgment at 2 (citing Ms. Miller's note that "[Plaintiff] reports dealing with psychiatric symptoms for six (6) years"). But see *supra* discussing extent of supportive medical records provided by Plaintiff, which do not include evidence of such prior mental health history. Compare Plaintiff's Brief in Support of Motion for Summary Judgment at 3 ("It is acknowledged that the Plaintiff has been dealing with her current psychiatric problems for approximately six (6) years as of April 5, 2005 . . . .").

10. The Court notes that this single page constitutes the entire record submitted as evidence of Plaintiff's being "followed [by] Louis K. Hauber, a licensed psychiatrist." See R. 427; Brief in Support of Plaintiff's Motion for Summary Judgment at 2.

    The Court is unable to identify from the documents of record the medical practices with which Ms. Miller and Dr. Hauber are affiliated, but the similar formatting of their reports suggests it is the same. It also notes that Dr. Hauber's diagnosis is of "panic disorder with agoraphobia" and that he was prescribing medication for anxiety. See R. at 427.

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999). Although there may be contradictory evidence in the record, and/or although this Court may have found otherwise, it is not cause for remand or reversal of the Commissioner's decision if substantial support exists. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

D.  Disability Evaluation

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not entitled to benefits within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

The requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence  . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. Section 423(d)(3).[11]

Finally, the applicable regulations set forth a more explicit five-step evaluation to determine disability.  The regulations, published at 20 C.F.R. §§404.1501-1529, set forth an orderly and logical sequential process for evaluating all disability claims.[12]  In this sequence, the ALJ must first decide whether the plaintiff is engaging in substantial gainful activity.  If not, then the severity of the plaintiff's impairment must be considered.  If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability.

---

11. In reviewing a disability claim, the Commissioner must consider subjective symptoms as well as the medical and vocational evidence.  See Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (explaining that "subjective complaints of pain [should] be seriously considered, even where not fully confirmed by objective medical evidence"); Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971) ("Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.").

In assessing a plaintiff's subjective complaints, the ALJ may properly consider them in light of the other evidence of record, including objective medical evidence, plaintiff's other testimony, and plaintiff's description of daily activities.  See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  And so long as a plaintiff's subjective complaints have been properly addressed, the ALJ's decisions in that regard are subject only to the substantial evidence review discussed in Section C, supra.  See  Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975) (discussing Bittel and concluding that where  "plaintiff did not satisfy the fact finder in this regard, so long as proper criteria were used, [it] is not for us to question"); see also Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1976) (noting that credibility determinations of ALJ are entitled to deference).

12. This evaluation process has been repeatedly reiterated with approval by the United States Supreme Court.  See, e.g., Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003).

If the impairment does not meet or equal the Listings, then it must be ascertained whether she can do her past relevant work.  If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file, to assess whether the plaintiff has the ability to perform other work existing in the national economy in light of plaintiff's age, education and past work experience.

While these statutory provisions may be regarded as harsh; nevertheless, they must be followed by the courts.  <u>NLRB v. Staiman Brothers</u>, 466 F.2d 564 (3d Cir. 1972); <u>Choratch v. Finch</u>, 438 F.2d 342 (3d Cir. 1971); <u>Woods v. Finch</u>, 428 F.2d 469 (3d Cir. 1970).  Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that Plaintiff was not disabled within the meaning of the Social Security Act.

E.  <u>Analysis</u>

As an initial matter,  to be eligible, a plaintiff has the burden of establishing that she has a qualifyingly-severe, medically-determinable impairment.  <u>See</u> 42 U.S.C. § 405(g).  <u>See</u> <u>also</u> <u>Adorno v. Shalala</u>, 40 F.3d 43,46 (3d Cir. 1994).  And a finding of disability is reserved to the Commissioner.  <u>See</u> 20 C.F.R. § 404.1527(e).

Although the opinion of a treating physician is entitled to increasingly enhanced weight when it is both supported by medically acceptable clinical and laboratory diagnostic techniques

and not inconsistent with the other substantial evidence of record,[13] it is not binding on the ALJ on the issues of the nature and severity of a claimant's impairment. See 20 C.F.R. § 404.1527(d)(2). Ultimately, Plaintiff's testimony and her treating physicians' conclusions reiterating that testimony cannot establish disability without objective evidence. See 20 C.F.R. § 404.1529(a) (requiring that claimant provide evidence of medical signs and laboratory findings revealing a medical impairment reasonably expected to produce her symptoms).

In this case, the ALJ determined that the limited evidence of physical and/or mental health disability provided in the medical records was simply insufficient to support Plaintiff's assertions that she was unable to engage in any substantial gainful employment as a result. The ALJ was within his discretion to so conclude. See 20 C.F.R. § 404.1512(a) (requiring claimant to "furnish medical and other evidence that [Agency] can use to reach conclusions about [claimant's] medical impairments and . . . ability to work on a sustained basis").   And so long as his Decision was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion", it may not be overturned. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

---

13.   See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (holding that ALJ may afford physician's opinions more or less weight depending on the extent to which they are supported); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that doctor's opinions unsupported by objective medical evidence is "weak evidence at best"). Cf. 20 C.F.R. § 404.1529(c)(3) (explaining that objective medical evidence is that obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of sensory deficits or motor disruption).

More particularly, Plaintiff failed to provide adequate medical evidence to support a finding of benefit eligibility. Her only evidence in support of mental health disability before the ALJ consisted of minimal notes reflecting self-reporting and/or subjective complaints and a conclusory assertion of severe depression. See Defendant's Brief in Support of Motion for Summary Judgment at 9. In contrast, the consultant's records explicitly reflect that Plaintiff's mental health evaluation was of "moderate" impairment. See 20 C.F.R. §§ 416.925-27 (providing that determination of whether particular psychological condition meets or equals requirements of a listed impairment is a medical judgment and may be made by the Commissioner's designated psychologists and consultative medical specialists). The ALJ explained his findings in this regard. Similarly, the ALJ appropriately explained the basis for his conclusions regarding Plaintiffs' subjective complaints. See R. at 20-21. In sum, the Decision indicates that all of the evidence provided by Plaintiff was considered by the ALJ and he evaluated it as a whole. Nothing in the records Plaintiff brings to this Court's attention calls the ALJ's decision into question under the applicable "substantial evidence" standard of review.

Similarly, the Appeals Council records indicate that it properly considered the subsequent evidence submitted. Plaintiff's assertion to Ms. Miller that she had been "dealing with" mental health issues for six years prior is, without more, insufficient basis - particularly under the applicable standard of review - for disagreement with the Appeals Council's conclusion that such new evidence was unlikely to impact the validity of the prior denial.[14] And, but for Plaintiff's

---

14. The Court notes that the phrase "dealing with" does not clearly suggest a course of medical evaluation or treatment and that claimant failed to provide any objective evidentiary support for her alleged mental health disability history.

assertion of prior history, these records of assessment/treatment in April, 2005 do not otherwise pertain to the time period relevant to the denial of benefits at issue.  See Boyer v. Commissioner of Social Security Administration, 48 Fed. Appx. 276 (9th Cir. 2002) (noting, in affirming benefit denial, that (1) there was no evidence of mental impairment of record before ALJ; (2) the Appeals Council properly declined to consider new evidence which did not relate to the relevant period; and (3) subsequent approval of benefits did not affect denial where two applications were distinguished by time period and evidence); id. (citing 20 C.F.R. § 416.1470(b)).

Accordingly, the subsequent award of benefits to Plaintiff on the basis of a later claim of mental health disability - as to which Plaintiff submitted later medical records of subsequent treatment - does not alter this Court's review of the prior denial of benefits, and the Appeals Council's affirmance thereof, under the applicable standard.  Cf. Szubak v. Secretary of Health and Human Services, 745 F.2d 831, 833 (3d Cir. 1984) (explaining that "an implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied").[15] Cf. also 20 C.F.R. § 404.620(a)(2) (providing that remedy for claimant who meets disability requirements after period in which her application was in effect, *i.e.*, after the ALJ's decision, is to file a new application).  That Plaintiff may have become subsequently disabled does not support reversal or remand as to the Decision at issue.[16]

---

15. Even as to evidence relevant to the applicable time period, the additional criteria for remand based upon new evidence include a demonstration of "good cause" as to why the evidence was not previously presented.

16. The Court notes that an assessment of the soundness of the subsequent award of benefits is not before it.  Indeed, that decision is not even of record.  Cf. Jack v. Barnhart 2004 WL 2200944 (N.D. Cal. Sept. 15, 2004) (noting that Court had "no means by which to determine" how subsequent award of SSA disability related to prior benefit denial and that, moreover, subsequent award of benefits was not material) (citing Bruton v. Massanari, 268 F.3d 824, 927
(continued...)

III. <u>Conclusion</u>

  For the reasons discussed above, the Commissioner's conclusion is supported by substantial evidence. For these reasons, it is recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

  In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

              Respectfully submitted,

              LISA PUPO LENIHAN
              United States Magistrate Judge

Dated: December 18, 2006

cc: Hon. Donetta W. Ambrose
   Chief Judge, United States District Court

   All Counsel of Record

---

16. (...continued)
(9th Cir. 2001) (holding that remand was not warranted based on subsequent award of benefits for different time period on different medical evidence)).